**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ERIN BRADFORD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-2933** |
| **TELERECOVERY, et al.** | **SECTION: "G"(1)** |

## ORDER

In this litigation, Plaintiff Erin Bradford ("Plaintiff") bring claims for violations of the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA") against Defendants Telerecovery ("Telerecovery") and Experian Information Solutions, Inc. ("Experian").[1] Presently pending before the Court is Plaintiff's "Motion for Default"[2] in which Plaintiff urges the Court to enter a default judgment against Telerecovery. Having reviewed the motion, the memorandum in support, the record, and the applicable law, the Court will grant in part and deny in part the pending motion.

## I. Background

### A. *Factual Background*

In this action, Plaintiff alleges that Experian is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f) and "is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 46.

15 U.S.C. § 1681a(d) to third parties."[3] Plaintiff alleges that Telerecovery is a "'debt collector' as defined by 15 U.S.C. § 1692a(6) and is engaged in the business with the purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[4]

Plaintiff alleges that Telerecovery furnished credit information to Experian, a consumer reporting agency.[5] According to Plaintiff, she sent Experian a dispute letter on August 21, 2015, disputing information that was being reported on her credit report regarding her Telerecovery account.[6] Specifically, Plaintiff disputed the allegedly inaccurate "Date of Status" and "First Reported" dates that were being reported on her credit report.[7] Plaintiff alleges that she received the results of her dispute on September 8, 2015.[8] According to Plaintiff, Telerecovery and Experian did not "correct, modify or delete the information."[9] Instead, Plaintiff alleges that they changed the "Date of Status" from "Jul 2015" to "Sep 2015" and the "First Reported" from "Jul 2015" to "Sep 2015."[10]

Plaintiff alleges that by doing so Telerecovery and Experian are "penalizing Plaintiff for exercising her statutory right to dispute inaccurate information on her credit report" and are "re-

---

[3] Rec. Doc. 1 at 2.

[4] *Id.* at 3.

[5] *Id.* at 2–3.

[6] *Id.* at 3.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at 3–4.

aging Plaintiff's Telerecovery account with every dispute."[11]  Plaintiff asserts that "[t]he re-aging and manipulating of the dates artificially lowered Plaintiff's credit score more than if the account was being reported accurately, as well as, making the account seem more recently delinquent than they really are to potential creditors, causing her damage."[12]  Plaintiff alleges that Experian and Telerecovery did not provide a good faith investigation into the Telerecovery account.[13]  Moreover, she asserts that Telerecovery is re-aging her account by changing the "Date of Status" and "First Reported" dates, thereby providing credit information that they know or should have known is inaccurate and misleading.[14]  She contends that the "Date of Status" should reflect the date when the account went uncollectible, and the "First Reported" date should reflect the date that the account was reported with Experian.[15]  She argues that the reporting of this credit information on her credit report negatively reflects upon her credit repayment history, her financial responsibility as a debtor, and her credit worthiness.[16]

According to Plaintiff, Experian and Telerecovery acted willfully and/or negligently, and she is entitled to recovery actual damages, punitive damages, and reasonably attorneys' fees pursuant to the FCRA, 15 U.S.C. § 1681n and 15 U.S.C. § 1681o.[17]  Plaintiff alleges that "Telerecovery violated its duty under 15 U.S.C. § 1681s-2(b) to conduct a good faith investigation

---

[11] *Id.* at 4.

[12] *Id.* at 12.

[13] *Id.* at 4.

[14] *Id.*

[15] *Id.*

[16] *Id.* at 6.

[17] *Id.* at 8.

into Plaintiff's notice of dispute and failing to delete or correct the inaccurate information."[18]

Plaintiff also alleges that Telerecovery violated the FDCPA, "15 U.S.C. § 1692e(2)(A) by falsely representing the character and/or the legal status of the alleged debt."[19] According to Plaintiff, Telerecovery also violated 15 U.S.C. § 1692e(8) by reporting credit information to Experian that it knew or should have known was false.[20] Finally, Plaintiff alleges that Telerecovery violated 15 U.S.C. § 1692e(10) and 15 U.S.C. § 1692f by falsely and deceptively re-aging the alleged account on her credit report.[21]

Plaintiff asserts that the conduct of Experian and Telerecovery directly and proximately caused her serious injuries, damages, and harm.[22] Therefore, she seeks the following relief: (1) actual damages pursuant to 15 U.S.C. § 1681; (2) statutory damages pursuant to 15 U.S.C. § 1681; (3) punitive damages pursuant to 15 U.S.C. § 1681; (4) costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n, §1681o; (5) actual damages pursuant to 15 U.S.C. § 1692k; (6) statutory damages pursuant to 15 U.S.C. § 1692k; (7) costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k; (8) such other and further relief as may be necessary, just and proper.[23]

## B.    *Procedural Background*

On April 11, 2016, Plaintiff filed a complaint against Telerecovery and Experian.[24] On

---

[18] *Id.* at 12.

[19] *Id.* at 19.

[20] *Id.*

[21] *Id.* at 22.

[22] *Id.* at 25.

[23] *Id.*

[24] Rec. Doc. 1.

May 16, 2016, Experian filed an answer to Plaintiff's complaint.[25] Telerecovery did not file an answer to Plaintiff's complaint, timely or otherwise. On August 25, 2016, the Court received a letter from Telerecovery, indicating that the company did not have the resources to defend itself in this litigation, but that it believed the case against Telerecovery should be dismissed.[26] The Court entered the letter into the record in this matter, but the Court noted that it could not act on the letter because it was not a proper filing and Telerecovery, as a company, cannot proceed pro se.[27] On September 6, 2016, Plaintiff filed a Motion for Entry of Default against Telerecovery.[28] The next day, the Clerk of the Court entered default against Telerecovery.[29] On May 24, 2017, Plaintiff filed a motion to dismiss her claims against Experian without prejudice,[30] which the Court granted.[31] On May 31, 2017, Plaintiff filed the instant Motion for Default Judgment against Telerecovery.[32] To date, Telerecovery has not filed an opposition to the motion or made any appearance in the case.

## II. Plaintiff's Arguments

In the motion for default judgment, Plaintiff argues that she served Telerecovery on May

---

[25] Rec. Doc. 7.

[26] Rec. Doc. 23 at 2.

[27] *Id.* at 1 (citing *Southwest Express Co., Inc.* v. ICC, 670 F.2d 53, 55 (5th Cir. 1982); *Paradise Village Children's Home Inc. v. Liggins*, 78 F. App'x 930 (5th Cir. 2007)).

[28] Rec. Doc. 24.

[29] Rec. Doc. 26.

[30] Rec. Doc. 43.

[31] Rec. Doc. 45.

[32] Rec. Doc. 46.

12, 2016.[33] She attaches a copy of the summons return to the motion.[34] Accordingly, Plaintiff requests that the Court enter a default judgment against Telerecovery.[35] Plaintiff asserts that similar cases typically settle for satisfaction of the alleged debt, plus $1,000 in statutory damages and attorneys' fees.[36] Here, Plaintiff contends that the alleged debt is $12.00.[37] Therefore, she argues that an award of $1,012.00 is appropriate.[38] Plaintiff also contends that an award of $9,000.00 in attorneys' fees is appropriate, encompassing a fee of $450.00 per hour for 20 hours of work.[39] Plaintiff asserts that she is entitled to recover costs she incurred in the amount of $420.00.[40] Finally, Plaintiff asserts that she is entitled to post-judgment interest at the legal rate provided by federal law.[41]

In further support of her motion, Plaintiff presents an affidavit of her attorney Jonathan Raburn.[42] Plaintiff's attorney attests that he has represented clients in Federal Debt Collection Act proceedings and Federal Credit Reporting Act proceedings of the same kind and character as the present case for approximately three years.[43] He further attests that he has "developed a reasonable

---

[33] *Id.* at 1.

[34] *Id.*

[35] *Id.* at 2.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.* at 3.

[42] Rec. Doc. 46-3 at 1.

[43] *Id.* at 2.

to high degree of skill, knowledge and experience in this field and [has] a reasonable understanding of what reasonable attorneys fees incurred for such services."[44] Moreover, he notes that a more experienced attorney is aiding in Plaintiff's case.[45] Therefore, he contends that an attorneys' fee award of $9,000.00, encompassing 20 hours of work at a rate of $450.00 per hour, is appropriate.[46] He further attests that Plaintiff's damages are $420.00 in costs, $12.00 to satisfy the debt, and $1,000.00 in statutory damages.[47]

### III. Law and Analysis

*A.    Legal Standard on a Motion for Default Judgment*

As the Fifth Circuit has explained, Federal Rule of Civil Procedure 55 establishes three steps for obtaining a default judgment: (1) default; (2) entry of default; and (3) default judgment.[48] A default occurs when "a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules."[49] The clerk will then enter an entry of default "when the default is established by affidavit or otherwise."[50] After the clerk's entry of default, "a plaintiff may apply for a judgment based on such default. This is a *default judgment*."[51] Before granting a motion for default judgment, this Court "has the duty to assure that it has the power to

---

[44] *Id.*

[45] *Id.*

[46] *Id.* at 3.

[47] *Id.*

[48] *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).

[49] *Id.*

[50] *Id.*

[51] *Id.* (emphasis in original).

enter a valid judgment," and must "look into its jurisdiction both over the subject matter and the parties."[52] The Fifth Circuit has held that "[a] judgment entered without personal jurisdiction is void."[53]

The Fifth Circuit emphasizes that "[d]efault judgments are a drastic remedy not favored by the Federal Rules and resorted to by courts only in extreme situations."[54] "A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default."[55] In cases over which the Court has subject matter jurisdiction and personal jurisdiction over the parties, the Court may only issue a default judgment when circumstances support doing so. If the procedural prerequisites for default are met, the Court must then decide whether the plaintiff's requests for relief are appropriate.[56] The Court considers the following factors in deciding a motion for default judgment:

[1]     whether material issues of fact are at issue,

[2]     whether there has been substantial prejudice,

[3]     whether the grounds for default are clearly established,

[4]     whether the default was caused by a good faith mistake or excusable neglect,

[5]     the harshness of a default judgment, and

[6]     whether the court would think itself obliged to set aside the default on the

---

[52] *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

[53] *Id.*

[54] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).

[55] *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).

[56] *Fagan v. Lawrence Nathan Assocs., Inc.*, 957 F. Supp. 2d. 784, 796 (E.D. La. 2013) (Brown, J.) (citations omitted).

defendant's motion.[57]

On a motion for default judgment, the Court accepts as true the plaintiff's allegations of fact, but remains obligated to determine whether those allegations state a claim for relief.[58] The pleadings must provide a sufficient basis to support the entry of a default judgment.[59]

When a party seeks a default judgment for damages, the Fifth Circuit instructs that "damages should not [be] awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts."[60] However, "where the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents and where a hearing would not be beneficial, a hearing is unnecessary."[61]

## B.    Jurisdiction to Enter a Default Judgment

As a preliminary matter, the Court considers whether it has subject matter jurisdiction over this action and personal jurisdiction over Telerecovery.

### 1.    Subject Matter Jurisdiction

Plaintiff alleges in her complaint that this is a suit for violations of the FCRA, 15 U.S.C. § 1681, and the FDCPA, 15 U.S.C. § 1692.[62] Thus, Plaintiff alleges that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.[63] Section 1331 states that the "district courts

---

[57] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

[58] *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001).

[59] *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (citations omitted).

[60] *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

[61] *Fagan*, 957 F. Supp. 2d at 802 (quoting *Columbia Pictures Indus., Inc. v. Whitting*, No. 06-CA-0133, 2006 WL 1851338, at *1 (W.D. Tex. June 1, 2006)).

[62] Rec. Doc. 1.

[63] *Id.* at 2.

shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[64] Accordingly, the Court finds that it has subject matter jurisdiction over Plaintiff's claims against Telerecovery.

## 2. Personal Jurisdiction

Next, the Court must determine whether it has personal jurisdiction over Telerecovery. Plaintiff alleges Telerecovery has its principal place of business in Louisiana.[65] A company is subject to general personal jurisdiction in the state where it has its principal place of business.[66] Accordingly, the Court finds that it has personal jurisdiction over Telerecovery.[67]

## 3. Service of Process

In order for a federal court to exercise personal jurisdiction over a defendant, "the procedural requirement of service of summons must be satisfied."[68] Consequently, absent proper service, the court lacks personal jurisdiction over the defendant, and any default judgment entered against the defendant is void.[69]

Proper service of process must occur in accordance with Federal Rule of Civil Procedure

---

[64] 28 U.S.C. § 1338(a).

[65] Rec. Doc. 1 at 2.

[66] *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) ("It is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.").

[67] ("It is ... incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *See Limited Liability Companies: Tax and Business Law* § 5 (2017) (noting that an LLC is subject to personal jurisdiction in the state where it was formed).

[68] *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) (citing *Miss. Publ'g Corp. v. Murphee*, 326 U.S. 438, 444–45 (1946) ("[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served.")).

[69] *See Rogers v. Hartford Life and Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999) ("When a district court lacks jurisdiction over a defendant because of improper service of process, the default judgment is void . . . ."); *Omni*, 484 U.S. at 104.

4. With respect to serving corporations, partnerships, or associations within a judicial district of the United States, Rule 4(h) authorizes service:

(1)     in the manner prescribed by Rule 4(e)(1) for serving an individual; or

(2)     by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Rule 4(e)(1) provides for service of process by:

(1)     following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made.

Under Louisiana Code of Civil Procedure Article 1264, "[s]ervice on an unincorporated association is made by personal service on the agent appointed, if any, or in his absence, upon a managing official, at any place where the business of the association is regularly conducted."[70] In the absence of any official from the place where business is regularly conducted, service may be made by personal service upon any member of the association.[71]

Here, the record indicates that Telerecovery was served through its registered agent, *i.e.* Joanna Hotard, in Kenner, Louisiana on May 12, 2016.[72] Accordingly, the Court finds that service of process was proper under Louisiana state law.

---

[70] La. Code Civ. P. art. 1264.

[71] *Id.*

[72] Rec. Doc. 46-1 at 12; Rec. Doc. 46-3 at 2.

## C.     *Entry of Judgment*

### 1.          **Whether Default Judgment is Appropriate**

The Court must next decide whether Plaintiff's request for entry of default judgment is appropriate.[73] The Court considers the following factors when determining whether to grant a default judgment:

[1]     whether material issues of fact are at issue,

[2]     whether there has been substantial prejudice,

[3]     whether the grounds for default are clearly established,

[4]     whether the default was caused by a good faith mistake or excusable neglect,

[5]     the harshness of a default judgment, and

[6]     whether the court would think itself obliged to set aside the default on the defendant's motion.[128]

As for the first factor, when a party fails to respond to a complaint, as Telerecovery has done here, it also fails to place any material facts in dispute, and is barred from contesting on appeal the facts as established by the participating party's pleadings.[74] Turning to the second factor, Telerecovery's failure to respond to the complaint in this matter has substantially prejudiced Plaintiff's interest in resolving her claims against Telerecovery.[75] Third, the grounds for default are clearly established. The record indicates that on May 12, 2016, Telerecovery was served with

---

[73] *Fagan v. Lawrence Nathan Assocs., Inc.*, 957 F. Supp. 2d 784, 796 (E.D. La. 2013) (Brown, J.) (citations omitted).

[128] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

[74] *Fagan*, 957 F.Supp.2d at 797 (citing *Nishimatsu Constr. Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

[75] *See id.*

a copy of the summons and complaint.[76] The Clerk of the Court ordered an entry of default on September 9, 2016.[77] Despite proper service of process, Telerecovery has not appeared to answer this matter or challenge the entry of default against it. Fourth, since Telerecovery not participated in this matter at all other than sending a pro se letter to the Court, it has not offered any evidence to show that its failure to appear was the product of good faith mistake or excusable neglect.

As for the fifth factor, entry of a default judgment would not be overly harsh, because, as discussed *infra*, Plaintiff is seeking a reasonable sum of money for violations of the FCRA and FDCPA. Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default judgment if challenged by Telerecovery. Accordingly, the Court finds that the six factors weigh in favor of entering a default judgment.

Finally, the Court notes that in *Frow v. De La Vega*, the Supreme Court held that when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against the defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted.[78] Courts have routinely withheld from entering a default judgment in multiple defendant cases when such entry could result in inconsistent judgments among all of the

---

[76] Rec. Doc. 5.

[77] Rec. Doc. 26.

[78] *See Frow v. De La Vega*, 82 U.S. 552 (1872).

defendants. [79] Here, Plaintiff has dismissed her claims against Experian. [80] Therefore, Telerecovery is the only remaining defendant in this case and entry of a default judgment against Telerecovery would not result in inconsistent judgments.

Next, the Court must determine whether, taking all of Plaintiff's well-pleaded facts as true, Plaintiff has adequately demonstrated that she is entitled to a default judgment on her claims.[81]

### 2. Plaintiff's Claims Against Telerecovery

Plaintiff claims that Telerecovery violated the FCRA, 15 U.S.C. § 1681, and the FDCPA, 15 U.S.C. § 1692.[82] Accordingly, the Court addresses each of these claims in turn.

#### a. *Fair Credit Reporting Act Claims*

Plaintiff alleges that "Telerecovery violated its duty under 15 U.S.C. § 1681s-2(b) to conduct a good faith investigation into Plaintiff's notice of dispute and failing to delete or correct the inaccurate information." [83] According to Plaintiff, Telerecovery acted willfully and/or negligently, and she is entitled to recover actual damages, punitive damages, and reasonably

---

[79] *See Esterlin v. Munster*, Case No. 14-1528 (E.D. La. Oct. 31, 2014) (Brown, J.) (denying an entry of default judgment when entering default judgment could result in inconsistent rulings and judgments among the defendants); *Williams v. Association De Prevoyance Interentreprises*, Case No. 11-1664 (E.D. La. Nov. 30, 2012) (Brown, J.); *United Nat'l Ins. Co. v. Paul and Mark's Inc.,* Case No. 10-799 (E.D. La. Feb. 3, 2011) (Lemelle, J.); *Mason v. N. Am. Life and Cas. Co.*, Case No. 94-1139 (E.D. La. Nov. 15, 1995) (Carr, J.) ("The Court declines to enter judgment against a defaulting defendant when such a judgment would require resolution of issues of law to the detriment of a defendant who has answered but has not been heard on the merits."). *See also* Wright, Miller, Kane, & Marcus, *Federal Practice and Procedure* § 2690 (3d. ed. 2012) ("As a general rule, when one of several defendants who is alleged to be jointly liable defaults, judgments should not be entered against him until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted. To rule otherwise could result in inconsistent judgments.") (citing *Frow v. De la Vega*, 82 U.S. 552 (1872)).

[80] Rec. Doc. 45.

[81] *See Fagan*, 957 F.Supp.2d at 797 (citing *Nishimatsu Constr. Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

[82] Rec. Doc. 1.

[83] *Id.* at 12.

attorneys' fees pursuant to the FCRA, 15 U.S.C. § 1681n and 15 U.S.C. § 1681o.[84]

The purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."[85] "The Act defines a complex set of rights and obligations that attend the relationships among and between the provider of a credit report, the user of that information and the consumer who is made the subject of such a report."[86]

The FCRA creates a duty for furnishers of information to provide accurate information, stating that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."[87] If a consumer reporting agency "notifies a furnisher of credit information . . . that a consumer disputes the reported information, the furnisher must 'review all relevant information provided by the consumer reporting agency,' 'conduct an investigation,' 'report the results of the investigation,' and 'modify . . . delete . . . or . . . permanently block the reporting of [inaccurate or incomplete] information.'"[88] The FCRA "creates a private cause of action to enforce § 1681s–2(b)."[89] Specifically, 15 U.S.C. § 1681o creates a private right of action for negligent violations

---

[84] *Id.* at 8.

[85] 15 U.S.C. § 1681(b).

[86] *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890 (5th Cir.1998). A

[87] 15 U.S.C. § 1681s-2(a)(1).

[88] *Jett v. American Home Mortg. Servicing Inc.*, 614 F. App'x 711, 713 (quoting 15 U.S.C. § 1681s-2(b)(1)(A)–(E)).

[89] *Id.*

of the Act, while 15 U.S.C. § 1681n provides a similar remedy for willful violations.

Here, Plaintiff alleges that Telerecovery furnished credit information to Experian, a consumer reporting agency.[90] She further alleges that she sent Experian a dispute letter on August 21, 2015, disputing information that was being reported on her credit report regarding her Telerecovery account.[91] Specifically, Plaintiff disputed the allegedly inaccurate "Date of Status" and "First Reported" dates that were being reported on her credit report.[92] Plaintiff alleges that she received the results of her dispute on September 8, 2015.[93] According to Plaintiff, Telerecovery and Experian did not "correct, modify or delete the information."[94] Instead, Plaintiff alleges that they changed the "Date of Status" from "Jul 2015" to "Sep 2015" and the "First Reported" from "Jul 2015" to "Sep 2015."[95] Plaintiff alleges that Experian and Telerecovery did not provide a good faith investigation into the Telerecovery account.[96] Moreover, Plaintiff alleges that Telerecovery acted willfully and/or negligently.[97]

Therefore, taking Plaintiff's allegations as true, Experian, a consumer reporting agency, notified Telerecovery, a furnisher of credit information, that Plaintiff disputed the reported information. Telerecovery then acted willfully or negligently in violating Plaintiff's rights by

---

[90] Rec. Doc. 1 at 2–3.

[91] *Id.*

[92] *Id.*

[93] *Id.*

[94] *Id.* at 3.

[95] *Id.* at 3–4.

[96] *Id.*

[97] *Id.* at 8.

failing to conduct an investigation and modify the inaccurate information. Accordingly, the Court finds that Plaintiff has sufficiently stated a claim against Telerecovery under the FCRA.

### b.     Fair Debt Collection Practices Act Claims

Plaintiff alleges that Telerecovery violated the FDCPA, "15 U.S.C. § 1692e(2)(A) by falsely representing the character and/or the legal status of the alleged debt."[98] According to Plaintiff, Telerecovery also violated 15 U.S.C. § 1692e(8) by reporting credit information to Experian that it knew or should have known was false.[99] Finally, Plaintiff alleges that Telerecovery violated 15 U.S.C. § 1692e(10) and 15 U.S.C. § 1692f by falsely and deceptively re-aging the alleged account on her credit report.[100]

The FDCPA prohibits "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt."[101] "Section 1692e furnishes a nonexclusive list of prohibited practices."[102] Under Section 1692e(2)(a), a debt collector is prohibited from making false representations of "the character, amount, or legal status of any debt." Pursuant to Section 1692e(8), a debt collector may not communicate or threaten to communicate "to any person credit information which is known or which should be known to be false." Under Section 1692e(10), a debt collector is prohibited from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Moreover, Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt

---

[98] *Id.* at 19.

[99] *Id.*

[100] *Id.* at 22.

[101] 15 U.S.C. § 1692e

[102] *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 (5th Cir. 2016).

to collect any debt." The FDCPA creates a private right of action against "any debt collector."[103]

Here, Plaintiff alleges that Telerecovery furnished credit information to Experian, a consumer reporting agency.[104] According to Plaintiff, Telerecovery and Experian did not "correct, modify or delete the information."[105] Instead, Plaintiff alleges that they changed the "Date of Status" from "Jul 2015" to "Sep 2015" and the "First Reported" from "Jul 2015" to "Sep 2015."[106] Moreover, she asserts that Telerecovery is re-aging her account by changing the "Date of Status" and "First Reported" dates, thereby providing credit information that they know or should have known is inaccurate and misleading.[107] Plaintiff asserts that "[t]he re-aging and manipulating of the dates artificially lowered Plaintiff's credit score more than if the account was being reported accurately, as well as, making the account seem more recently delinquent than they really are to potential creditors, causing her damage."[108]

Therefore, taking Plaintiff's allegations as true, she has alleged that Plaintiff alleges that Telerecovery violated the FDCPA by falsely representing the character of the alleged debt, by reporting credit information to Experian that it knew or should have known was false, and by falsely and deceptively re-aging the alleged account on her credit report. Accordingly, the Court finds that Plaintiff has sufficiently stated a claim against Telerecovery under the FDCPA.

---

[103] 15 U.S.C. § 1692k.

[104] Rec. Doc. 1 at 2–3.

[105] *Id.* at 3.

[106] *Id.* at 3–4.

[107] *Id.* at 4.

[108] *Id.* at 12.

## D.    *Damages*

Although the Court has found that entry of a default judgment is warranted on Plaintiff's FCRA and FDCPA claims, it must further determine if it would be appropriate to award the remedies requested by Plaintiff in the pending motion.[109] Federal Rule of Civil Procedure 54(c) states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." While the relief available is restricted to what is requested in the pleadings, the Court must also determine if the requested relief is appropriate based on governing law.[110]

When a party seeks a default judgment for damages, the Fifth Circuit has held that "damages should not [be] awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts."[111]  However, "where the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents and where a hearing would not be beneficial, a hearing is unnecessary."[112] Here, Plaintiff has provided the Court with an affidavit of her attorney to support the relief requested. As this information establishes the basis for the damages and relief specified in the request for default judgment, it is not necessary for the Court to hold a hearing.[113]  Furthermore, as Telerecovery failed to take action in this matter, it is unlikely that it would participate in an evidentiary hearing to determine

---

[109] *Fagan v. Lawrence Nathan Assocs., Inc.*, 957 F. Supp. 2d. 784, 801 (E.D. La. 2013) (Brown, J.).

[110] *Id.*

[111] *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

[112] *Fagan*, 957 F. Supp. 2d at 802 (quoting *Columbia Pictures Indus., Inc. v. Whitting*, No. 06-0133, 2006 WL 1851338, at *1 (W.D. Tex. June 1, 2006)).

[113] *Id.*

damages. Therefore, a hearing would not be beneficial and as such is unnecessary.[114]

In Plaintiff's complaint, she seeks the following relief: (1) actual damages pursuant to 15 U.S.C. § 1681; (2) statutory damages pursuant to 15 U.S.C. § 1681; (3) punitive damages pursuant to 15 U.S.C. § 1681; (4) costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n, §1681o; (5) actual damages pursuant to 15 U.S.C. § 1692k; (6) statutory damages pursuant to 15 U.S.C. § 1692k; (7) costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k; (8) such other and further relief as may be necessary, just and proper.[115] In her motion for default judgment, Plaintiff requests that the Court award her $12.00 for satisfaction of the alleged debt, plus $1,000.00 in statutory damages, $420.00 in costs, attorneys' fees in the amount of $9,000.00, and post-judgment interest at the legal rate provided by federal law.[116]

Section 1681n of the FCRA provides that in the case of willful violations damages may be awarded for "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000," punitive damages, costs of the action, and reasonable attorney's fees.[117] Section 1681o of the FCRA provides that in the case of negligent violations damages may be awarded for "any actual damages sustained by the consumer as a result of the failure," costs of the action, and reasonable attorney's fees.[118] Section 1692k of the FDCPA provides for damages in the amount equal to the sum of "any actual damages sustained by such person" and "in the case of any action by an individual, such additional damages as the court may

---

[114] *James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993) (citing Fed. R. Civ. P. 55(b)).

[115] Rec. Doc. 1 at 27.

[116] Rec. Doc. 46 at 2–3.

[117] 15 U.S.C. § 1681n(a)(1).

[118] 15 U.S.C. § 1681o(a).

allow, but not exceeding $1,000."[119] Moreover, the FDCPA authorizes the award of attorney's fees and costs in the case of any successful action.[120]

As noted above, Plaintiff requests that the Court award her $12.00 for satisfaction of the alleged debt, plus $1,000.00 in statutory damages, $420.00 in costs.[121] Plaintiff provides the affidavit of her attorney, Jonathan Raburn, as support that the alleged debt was $12.00.[122] The record also indicates that Plaintiff paid a filing fee of $400 in filing the complaint in this action,[123] and a $30 fee for service on Telerecovery.[124] Section 1692k of the FDCPA provides for damages in the amount equal to the sum of "any actual damages sustained by such person," damages not exceeding $1,000, and costs.[125] Therefore, the Court concludes that Plaintiff's request for damages in the amount of $1,012.00 plus $420.00 in costs is appropriate.

Plaintiff also requests $9,000 in attorney's fees, representing 20 hours of work at a rate of $450.00 per hour.[126] In support of her motion, Plaintiff presents an affidavit of her attorney Jonathan Raburn.[127] Plaintiff's attorney attests that he has represented clients in Federal Debt Collection Act proceedings and Federal Credit Reporting Act proceedings of the same kind and

---

[119] 15 U.S.C. § 1692k(a)(1)–(2).

[120] 15 U.S.C. § 1692k(a)(3).

[121] Rec. Doc. 46 at 2–3.

[122] Rec. Doc. 46-3 at 3.

[123] *See* Rec. Doc. 1.

[124] *See* Rec. Doc. 46-1 at 12.

[125] 15 U.S.C. § 1692k(a)(1)–(3).

[126] Rec. Doc. 46 at 2–3.

[127] Rec. Doc. 46-3 at 1.

character as the present case for approximately three years.[128] He further attests that he has "developed a reasonable to high degree of skill, knowledge and experience in this field and [has] a reasonable understanding of what reasonable attorneys fees incurred for such services."[129] Moreover, he notes that a more experienced attorney is aiding in Plaintiff's case.[130]

To calculate reasonable attorney's fees, the Fifth Circuit uses the "lodestar" method, which involves multiplying the number of hours spent by a reasonable hourly rate for such work in the community to obtain a lodestar.[131] A court may then enhance or decrease the lodestar based on the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*[132] The lodestar may not be adjusted if the *Johnson* factors were considered in determining the original lodestar amount.[133]

Here, Plaintiff's counsel has not submitted any time records to support his assertion that he

---

[128] *Id.* at 2.

[129] *Id.*

[130] *Id.*

[131] *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999).

[132] *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). Traditionally, courts have considered the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) when calculating attorney's fees. In *Perdue v. Kenny A. ex. rel. Winn,* 559 U.S. 542, 550–551 (2010), the Supreme Court noted that the *Johnson* factors were "[o]ne possible method" for determining reasonable attorney's fees, but that the factors "gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." Since *Perdue*, however, the Fifth Circuit and the Eastern District of Louisiana have continued to weigh the *Johnson* factors when considering whether to decrease or enhance the lodestar in attorney's fee cases. *See, e.g., Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 388 n.17 (5th Cir. 2013); *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013); *Altier v. Worley Catastrophe Response, LLC*, No. 11-241, 2012 WL 161824, at *22 (E.D. La. Jan. 18, 2012) (Wilkinson, M.J.). Accordingly, this Court does the same. *See Ahmed v. Bros. Food Mart, et al.*, No. 13-5948, Rec. Doc. 33 (E.D. La. Sept. 12, 2014) (Brown, J.).

[133] *Johnson*, 488 F.2d at 417–19. The *Johnson* factors are: (1) the time and labor required to litigate the matter; (2) the novelty and difficulty of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case imposed time constraints; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) whether the case was "undesirable;" (11) the type of attorney-client relationship and whether the relationship was long-standing; and (12) awards made in similar cases.

spent 20 hours working on this case. Therefore, the Court cannot determine whether the number of hours expended was reasonable. Moreover, Plaintiff has not provided any information to the Court to demonstrate that Raburn's hourly rate is reasonable "in the community for such work."[134] As the Fifth Circuit held in *Louisiana Power & Light Company v. Kellstrom*, courts awarding attorneys' fees must determine both the reasonable number of hours expended on a matter and "the reasonable hourly rates for the participating lawyers."[135] The Fifth Circuit has instructed that courts should consider both the attorney's regular rate as well as the prevailing rates in the community for similar work to ensure the billing rate requested is reasonable.[136] Similarly, in *Blum v. Stenson*, the Supreme Court determined that "courts properly have required prevailing attorneys to justify the reasonableness of the requested rate" by placing the burden on the applicant "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[137]

Here, as noted *supra*, Raburn indicates that he has three years of experience in litigating FCRA and FDCPA cases. However, he provides no other information regarding his reputation, or special skills, or the prevailing rates for similar attorneys in the Eastern District of Louisiana. As the Fifth Circuit has previously determined, "[t]he hourly fee awarded must be supported by the record; the district court may not simply rely on its own experience in the relevant market to set a

---

[134] *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006).

[135] 50 F.3d 319, 324 (5th Cir. 1995).

[136] *Id.* at 328 (citing *H.J., Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991)).

[137] 465 U.S. 886, 896 n.11 (1984).

reasonable hourly billing rate."[138] Thus, the Court cannot determine at this time whether the requested hourly rate is reasonable. Accordingly, the Court hereby denies Plaintiff's request for attorney's fees at this time.

Finally, 28 U.S.C. § 1961 provides: "Interest *shall* be allowed on any money judgment in a civil case recovered in a district court."[139] Accordingly, the Court also grants Plaintiff's request for interest on the amount of this judgment in accordance with 28 U.S.C. § 1961.

## IV. Conclusion

For the foregoing reasons, the Court finds that it has jurisdiction to enter a default judgment against Telerecovery and that entry of a default judgment is appropriate in this case. The Court further finds that taking all of Plaintiff's well-pleaded facts as true, Plaintiff has adequately demonstrated that she is entitled to default judgment on her claims for violation of the FCRA and FDCPA. The Court finds Telerecovery liable to Plaintiff in the amount of $1,012.00 in damages and $420.00 in costs, plus interest on the amount of this judgment from the date of this judgment, pursuant to 28 U.S.C. § 1961. However, because of a lack of evidence submitted, the Court cannot determine at this time whether the hours expended or the hourly rate requested by Plaintiff for Plaintiff's counsel's work on this case is reasonable. Accordingly, the Court hereby denies Plaintiff's request for attorney's fees at this time.

Accordingly,

---

[138] *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1234 (5th Cir. 1997) (citations omitted); *see also Cobb v. Miller*, 818 F.2d 1227, 1232 & n.7 (5th Cir. 1987) (noting that a magistrate judge should not have considered his personal experience in setting a reasonable hourly rate).

[139] *See* 28 U.S.C. § 1961(a) (emphasis added).

**IT IS HEREBY ORDERED** that Plaintiff's motion for default judgment [140] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's motion **GRANTED IN PART** to the extent that Plaintiff request judgment against Telerecovery for $1,012.00 in damages for and $420.00 in costs, plus interest on the amount of this judgment from the date of this judgment, pursuant to 28 U.S.C. § 1961. Plaintiff's motion is **DENIED IN PART** to the extent that Plaintiff request attorney's fees.

**NEW ORLEANS, LOUISIANA**, this __14th__ day of June, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[140] Rec. Doc. 46.